IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LEAH BELTZ, formerly known as LEAH J. MEDLIN, : : : Plaintiff, : : v. : : CITIMORTGAGE, INC. : : : : Defendants. : | CIVIL ACTION NO. 1:15-CV-2649-AT |

## **ORDER**

This matter is before the Court on Plaintiff's Motion for Immediate Injunctive Relief ("Motion") [Doc. 4] and Defendant's Motion for Leave to Perfect Record by Authenticating and Admitting Defendant's Exhibits 1-3 [Doc. 16]. Plaintiff seeks to prevent an impending foreclosure sale (currently scheduled for October 1, 2015) of her residential property, located at 1061 Ashebrooke Way N.E., Marietta, Georgia 30068. (Motion at 1.) The Court held a hearing on Plaintiff's Motion on August 27, 2015. For the reasons set forth in this Order, Plaintiff's Motion is **DENIED.** Defendant's Motion is **GRANTED.**

Before a court will grant a motion for injunctive relief like a temporary restraining order ("TRO"), the moving party must establish that: (1) she has a substantial likelihood of success on the merits; (2) she will suffer irreparable injury if the relief is not granted; (3) the threatened injury outweighs the harm

the relief may inflict on the non-moving party; and (4) entry of relief would not be adverse to the public interest. *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006). "Of these four requisites the first factor, establishing a substantial likelihood of success on the merits, is most important . . . ." *ABC Charters, Inc. v. Bronson*, 591 F. Supp. 2d 1272, 1294 (S.D. Fla. 2008).

I.     BACKGROUND

This case concerns Plaintiff's allegations that her mortgage servicer has engaged in a pattern of bad faith conduct by failing to properly consider her for a loan modification after she fell into default on her home mortgage loan.

Plaintiff alleges that that she entered into a settlement agreement with Defendant on September 4, 2013 concerning some of this alleged past misconduct. (Doc. 1-3.) ("Settlement Agreement"). The Settlement Agreement allowed Plaintiff to forgo making principal and interest payments on her mortgage loan until the earlier of (1) March 15, 2014 or (2) permanent modification of the loan. The Settlement Agreement did not guarantee modification of the loan, included a broad release of claims, and included an agreement by Plaintiff not to "interfere with" foreclosure efforts in the event her loan was not modified by March 15, 2014. (*Id.*)

Plaintiff did not actually apply for a loan modification until June of 2014, after the expiration of the deadline in the Settlement Agreement. From that point on, Plaintiff alleges she applied for a loan modification with Defendant on at least four separate occasions: June 27, 2014 (Am. Compl. ¶ 6); August 8, 2014 (Am.

Compl. ¶ 13); December 31, 2014, (Am. Compl. ¶ 22.); and on April 3, 2015. (Am. Compl. ¶ 30.)

Plaintiff further alleges that Defendant failed to comply with the mortgage servicing regulations recently promulgated under the Real Estate Settlement Procedures Act ("RESPA") when it evaluated her loan modification applications. *See* 12 C.F.R. § 1024.41 ("mortgage servicing regulations"); 12 U.S.C. § 2605 *et seq.* In short, she claims that Defendant repeatedly accepted her application materials, but dragged its feet in making a decision, and eventually sought foreclosure despite not properly considering her application under the mortgage servicing regulations. (*E.g.*, Am. Compl. ¶ 40.)

More specifically, she alleges that that (1) Defendant repeatedly failed to notify Plaintiff if her application was "complete" or not within five (5) days of receipt, in violation of 12 C.F.R. § 1024.41(b)(2)(i); (2) that Defendant failed to inform Plaintiff whether or not her application was approved or denied prior to attempting to foreclose, in violation of 12 C.F.R. § 1024.41(c)(1)(ii) and 1024.41(g); and (3) Defendant failed to notify Plaintiff of her right to appeal denial of a "complete application" for a loan modification that was submitted more than 90 days before a scheduled foreclosure, in violation of 12 C.F.R. § 1024.41(h). (*See e.g.*, Am. Compl. ¶¶ 26-28.)

Plaintiff also alleges that Defendant breached its contractual obligations in two ways. First, she alleges in her original complaint that Defendant failed to comply with its obligations under the Settlement Agreement. (Doc. 1-3, Compl. ¶

3

43.)  Second, she alleges in her amended complaint that Defendant failed to provide proper notice under Paragraph 22 of her security deed, which mandates that the creditor send the borrower a notice of default that, inter alia, specifies a date by which to cure the default.  (Am. Compl. ¶ 46.)

## II.     ANALYSIS

Plaintiff seeks an injunction preventing the foreclosure sale of her home under a variety of theories.  She specifically seeks, in her pleadings and her briefs, an injunction for violations of RESPA and for her breach of contract claims.  She also alleges in her amended complaint (Doc. 9) claims under other consumer protection statutes that may allow for injunctive relief, though she does not specifically rely on these statutes in her briefs.  For the sake of completeness, the Court addresses all possible avenues for injunctive relief.

### a.  Injunctive Relief Under RESPA

Plaintiff first seeks injunctive relief for Defendant's alleged violations of the mortgage servicing regulations located at 12 C.F.R. § 1024.41.  These regulations set out a series of procedures that servicers must comply with when evaluating struggling homeowners' applications for loan modifications or other assistance with their mortgage.  *Id.*  Failure to comply with these regulations violates RESPA, and results in a potential claim for actual damages, statutory damages, and attorney's fees.  12 U.S.C. § 2605(f).  However, the regulations do not guarantee a loan modification or any other loss mitigation result for any homeowner. 12 C.F.R. § 1024.41(a) ("nothing [in this section] imposes a duty on

a servicer to provide any borrower with any specific loss mitigation option"). Moreover, RESPA, which is the remedial vehicle for violations of the regulations, is silent as to whether it permits injunctive relief. *See* 12 U.S.C. § 2605(f).

Plaintiff was unable to provide the Court with any authority supporting the availability of injunctive relief under RESPA in her briefs or at the hearing. Instead, Plaintiff argued that the Court has the general equitable authority to impose injunctive relief when appropriate. (Doc. 8) (citing *Califano v. Yamasaki*, 442 U.S. 682, 705 (1979) for the proposition that district courts have broad powers to fashion equitable relief).[1] This argument is insufficient to meet Plaintiff's burden on a motion for a TRO. However, the conduct alleged, if properly pleaded, may support a damages claim under the mortgage servicing regulations.

### b. Plaintiff's Breach of Contract Claims.

Plaintiff also makes two breach of contract arguments. First, she argues that Defendant failed to comply with the 2013 Settlement Agreement. (Doc. 1-3 at 18.) However, the Settlement Agreement did not guarantee a loan modification would actually be approved (Doc. 1-3 at 2), and Plaintiff agreed not to interfere

---

[1] The courts that have considered whether RESPA provides for injunctive relief have generally held that it does not. *See e.g., Cataldi v. New York Community Bank*, No. 13-cv-3972-RWS-JSA, 2014 WL 359954 at *2 (N.D. Ga. Feb. 3, 2014) (denying injunctive relief under CFPB's new servicing regulations, and holding that Section 6(f) of RESPA only allows suits for damages and costs); *Szczodrowski v. Specialized Loan Servicing, LLC*, No. 15-cv-10668, 2015 WL 1966887 at *7 (E.D. Mich. May 1, 2015) (equitable relief unavailable under RESPA); *see also Simmons v. Wells Fargo Bank, N.A.*, Case No. 14-cv-333, 2015 WL 4759441 at *5 (D. N.H. Aug. 11, 2015) (injunctive relief unavailable under RESPA). Because Plaintiff was unable to provide authority that met her burden in seeking injunctive relief, the Court does not reach this issue.

with a foreclosure if she was not approved for a modification by March 15, 2014. (*Id.*)

The Parties addressed whether Defendant waived[2] the March 15 deadline at the August 27, 2015 hearing on Plaintiff's Motion.  The Court finds, at least for the purposes of consideration of Plaintiff's request for injunctive relief, that Defendant did not waive this deadline.  Waiver of a contractual right must be knowing and voluntary, and established by express statements or implied conduct.  *Mullis v. Bibb County*, 669 S.E.2d 716, 725 (Ga. Ct. App. 2008) (giving an inaccurate start date for employee's benefits did not mean employer waived its rights under benefits plan).  The law will not infer a waiver of rights unless the waiver is "clear and unmistakable."  *Great Atlantic Pacific Tea Co., Inc.* v. *F.S. Associates, LP*, 571 S.E 2d 527, 529 (Ga. Ct. App. 2002) (failure to enforce duty of counter-party under a lease to provide proof of liability insurance was not a waiver of such requirement).

In this instance, Plaintiff has not met her burden that she has a substantial likelihood of proving that Defendant knowingly waived any portion of the

---

[2] Plaintiff's former attorney testified as a witness on her behalf, and raised the possibility that Defendant entered into a novation with Plaintiff by virtue of its conduct in accepting new loan modification applications.  The Court disagrees.  A novation is essentially a new contract that extinguishes the old.  *See Aetna Cas. & Sur. Co. v. Valdosta Fed. Sav. & Loan Ass'n*, 333 S.E.2d 849, 851 (Ga. Ct. App. 1985) (loan modification is not a novation because the security deed is not cancelled).  Plaintiff did not present sufficient evidence to suggest she is reasonably likely to succeed on her contention that Plaintiff and Defendant entered into an entirely new contract once Defendant started accepting loan modification applications past the deadline imposed by the Settlement Agreement, especially given the lack of any evidence that Defendant received consideration (a pre-requisite for a new contract) in exchange for its continued acceptance of applications.

Settlement Agreement. The Parties specifically provided in the Agreement that all modifications to the agreement had to be in writing. (Doc. 1-3 at 21.) More, the mortgage servicing regulations discussed herein went into effect on January 10, 2014, meaning Defendant actually may have had an *obligation* to accept a loan modification application from Plaintiff after the expiration of the date provided in the Settlement Agreement. 12 C.F.R. § 1024.41 (effective January 10, 2014).

Even if Defendant did waive the March 15, 2014 deadline in the Settlement Agreement, that waiver was likely time-limited, as Defendant continued to impose deadlines on Plaintiff after which it would no longer accept an application. (Doc. 8-8) (correspondence providing a final deadline for a loan modification application). For these reasons, Plaintiff has not shown a substantial likelihood of success on this contract claim.

Plaintiff's second breach of contract claim, which it asserts in its Amended Complaint and in its Reply (Doc. 8), is centered on Defendant's alleged failure to send a pre-acceleration notice of Plaintiff's default that included the action required to cure the default, a due-by date to cure the default, and notice that failure to cure would result in acceleration and foreclosure. (*Id.* at 11.) Plaintiff alleges that this failure violates Paragraph 22 of her security deed.

Georgia courts have repeatedly recognized that a party's failure to send a pre-acceleration notice required by a security deed may support a claim for breach of contract. *James v. Bank of America, N.A.*, 772 S.E.2d 812, 816 (Ga. Ct.

7

App. 2015) (failure to comply with notice requirements in security deed supports breach of contract claim); *BAC Home Loans Servicing, LP v. Wedereit*, 773 S.E.2d 711, 714 (Ga. 2015) (reversing summary judgment for borrower, but holding that an issue of fact remained as to whether he had stated breach of contract claim for alleged violation of security deed's notice requirements); *see also Sweeney v. American Home Mortg. Servicing*, Inc., 10-cv-111-AE, 2011 WL 710986 at *4 (S.D. Ga. Feb. 22, 2011) (failure to accelerate pursuant to security deed results in lack of right to foreclose).

However, at the August 27, 2015 hearing, Plaintiff offered almost no evidence, and minimal argument, concerning this issue. Defendant, for their part, submitted copies of notices of default allegedly sent to Plaintiff in 2011 alongside their September 10, 2015 Motion. (Doc. 16-1). These notices are accompanied by a Supplemental Declaration of Cindy Schneider, purporting to authenticate them. (*Id.*) The Court takes notice of these letters for the purposes of Plaintiff's request for injunctive relief only, and Plaintiff is free to challenge their authenticity in any further proceedings. However, given Defendant's submission of the notices of default and the lack of evidence presented by Plaintiff, the Court finds that Plaintiff has not met her high burden for injunctive relief on this claim.[3]

---

[3] The Court notes that at least one learned treatise has observed that it is "unclear whether a lender must provide the debtor with a new demand letter and thirty-day right to cure prior to acceleration, or may instead simply issue a new notice of acceleration" after an initial acceleration is rescinded by virtue of cancellation of the foreclosure proceedings. FRANK

### c. Plaintiff's Remaining Consumer Law Claims.

Plaintiff also has not met her burden in showing she is entitled to injunctive relief for her claims under the Fair Debt Collection Practices Act ("FDCPA"), Georgia Fair Lending Act ("GFLA"), and Fair Business Practices Act ("FBPA'). First, while the FDCPA can apply to entities seeking foreclosure, see *Reese v. Ellis, Painter, Ratterree, & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012), it does not provide for injunctive relief in suits by private parties. *Sibley v. Fulton DeKalb Collection Service*, 677 F.2d 830, 834 (11th Cir. 1982) ("equitable relief is not available to an individual under" the FDCPA); *Hennington v. GreenPoint Mortg. Funding*, No. 09-cv-676-RWS, 2009 WL 1372961 at *6 (N.D. Ga. May 15, 2009).

GFLA, on the other hand, does allow for injunctive relief for homeowners facing foreclosure, but only under two limited sets of circumstances, neither of which apply here. First, the act bars certain practices for all home loans in O.C.G.A. § 7-6A-3. However, Plaintiff has not alleged any of these violations. (*See* Doc. 9.) Second, the act bars a much wider set of practices for "high-cost home loans," a subset of loans defined by the statute. O.C.G.A. § 7-6a-2. The statute also imposes a higher bar for foreclosure of high-cost loans. O.C.G.A. §§ 7-6a-5(11)-(13). However, Plaintiff has not alleged she has a high-cost home loan, meaning these foreclosure protection provisions are not triggered.

---

ALEXANDER, SARA J. TOERING, & SARAH BOLLING MANCINI, GEORGIA REAL ESTATE FINANCE AND FORECLOSURE LAW § 4.3 (2014-15). The Court does not reach this issue, given the lack of evidence offered by Plaintiff.

Finally, the Fair Business Practices Act, O.C.G.A. § 10-1-390 *et seq.*, also provides for injunctive relief in appropriate circumstances. However, consumers must send a 30-day notice "reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered" as a pre-requisite to filing an action under the FBPA. O.C.G.A. § 10-1-399(b). There is no showing that Plaintiff did so here. (*See* Am. Compl., Doc. 9.) Accordingly, she has not met her burden for injunctive relief.[4] *See Brown Realty Assocs., Inc. v. Thomas*, 389 S.E.2d 505, 510 (Ga. 1989) (assuming FBPA applied to foreclosure-related claim but affirming verdict for defendant because of failure to deliver 30-day notice).

The Court is aware of how serious and devastating it is for any person to face the loss of a home to foreclosure. And the Court is concerned about the allegations in this matter that Defendant failed to comply with the important new protections provided by federal law. 12 C.F.R. § 1024.41. However, the Court is only authorized to grant the extreme relief of a TRO when the high standards for such relief have been met. They have not been met here, and so Plaintiff's Motion for Immediate Injunctive Relief [Doc. 4] is **DENIED.** Defendant's Motion for Leave to Perfect Record [Doc. 16] is **GRANTED**. The Clerk is **DIRECTED** to admit the Notices marked as Defendant's Exhibits 1 through 3 (Doc. 16-1) into evidence for the August 27, 2015 hearing. This matter is **REFERRED** to the

---

[4] The Court does not reach the issue of whether or not the FBPA applies to foreclosures at this time.

next available Magistrate Judge for consideration of all non-injunctive relief issues.

**IT IS SO ORDERED** this 11th day of September, 2015.

_____
**Amy Totenberg
United States District Judge**