IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LEAH BELTZ, *formerly known as*
LEAH J. MEDLIN,

     Plaintiff,

  v.

CITIMORTGAGE, INC.,

     Defendant.

CIVIL ACTION FILE

NO. 1:15-CV-02649-AT-WEJ

## FINAL REPORT AND RECOMMENDATION

Plaintiff pro se, Leah Beltz, filed this action in the Superior Court of Cobb County [1-3] on July 21, 2015, against defendants CitiMortgage, Inc. ("CitiMortgage") and Pendergast & Associates, P.C. ("Pendergast") [1] in connection with real property located at 1061 Ashebrooke Way, N.E., Marietta, Georgia 30068 (the "Property"). Defendants removed the matter to this Court on

---

[1] Defendant Pendergast was terminated from the case on July 28, 2015 by Order of this Court because "[t]he Court can discern no actual claim asserted against Pendergast." (See Order of July 28, 2015 [2] n.1.)

July 27, 2015.  (Notice of Removal [1].)  Plaintiff filed an Amended Complaint [12] on August 27, 2015.[2]

The Amended Complaint asserts twelve claims for relief against CitiMortgage in connection with the Property.  (See generally Am. Compl.) Specifically, it alleges:  "Breach of Contract for Failure to Provide Notice Pursuant to the Security Deed and Failure to Act in Good Faith and Fair Dealing Regarding Plaintiff's Loan Modification" (Count I); "Breach of Good Faith and Fair Dealing" (Count II); "Violation of the Consumer Financial Protection Bureau Mortgage Loan Servicing ('CFPB')" (Count III); "Violation of Dual Tracking" (Count IV); "Violations of the Real Estate Settlement Procedures Act ('RESPA')" (Count V); "Violations of the Fair Debt Collection Practices Act ('FDCPA')" (Count VI); "Violation of the Georgia Fair Lending Act ('GFLA')" (Count VII); "Violation of the Georgia Fair Business Act ('GFBA')" (Count VIII); "Declaratory Judgment Relief" (Count IX); "Pattern and Practice" (Count X); "Damages" (Count XI); and "Attorney's Fees and Costs" (Count XII).  (Id.)

_____

[2] Only the claims set forth in the Amended Complaint are before the Court. See Varnes v. Local 91, Glass Bottle Blowers Ass'n, 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982) ("As a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading.").

Now pending before this Court is defendant's Motion for Summary Judgment [39].  In its Motion, CitiMortgage seeks entry of summary judgment against all of plaintiff's claims and briefs all of the claims extensively.  (See Def.'s Br. [39-1].)  However, Ms. Beltz makes no argument in her Response [41][3] that her breach of contract (Count I), breach of good faith and fair dealing (Count II), FDCPA (Count VI), GFLA (Count VII), GFBA (Count VIII), and pattern and practice (Count X) claims should survive summary judgment.[4]

Claims that are alleged in a complaint but not addressed in response to a motion for summary judgment are deemed abandoned.  See Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) ("grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned");

_____

[3] The Clerk mailed Ms. Beltz a "Notice to Respond to Summary Judgment Motion" [40] on April 25, 2016. (See Notice.)  This Notice instructed plaintiff to file "all materials, including any affidavits, depositions, answers to interrogatories, admissions on file, and any other relevant materials, which you wish to be considered in opposition to the motion for summary judgment" by May 16, 2016. (See id.)  Plaintiff filed the Response on May 17, 2016, one day past the deadline. The undersigned nonetheless considers the Response to the extent necessary to determine whether Ms. Beltz has abandoned claims in the Amended Complaint.

[4] Ms. Beltz does not specifically address CitiMortgage's arguments regarding her CFPB (Counts III & IV) and RESPA (Count V) claims, but, as defendant observes, she references CitiMortgage's loss mitigation procedures throughout the Response.  Thus, plaintiff has not abandoned her CFPB and RESPA claims.

3

Hudson v. Norfolk S. Ry. Co., 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned.").

Thus, the undersigned **RECOMMENDS** that summary judgment be **GRANTED** for defendant on plaintiff's breach of contract (Count I), breach of good faith and fair dealing (Count II), FDCPA (Count VI), GFLA (Count VII), GFBA (Count VIII), and pattern and practice (Count X) claims, because those claims have been abandoned.[5]

With regard to the remaining claims, the undersigned **FURTHER RECOMMENDS** that summary judgment be **GRANTED** for defendant on plaintiff's CFPB claims (Counts III & IV) and her RESPA claim (Count V). As explained in detail below, there are no genuine issues as to any material facts to

--------------------

[5] Plaintiff makes several new allegations in the Response, including that she was not in default at the time she originally applied for Loan modification, and that CitiMortgage breached the Settlement Agreement. (See generally Pl.'s Resp.) The Court need not address any claim alleged only in the Response because the case law is clear that a plaintiff may not amend the complaint via her response brief. See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

be tried.  Accordingly, plaintiff's claims seeking a declaratory judgment, damages, and attorney's fees and costs (Counts IX, XI, XII) also must fail.

## I.   STATEMENT OF FACTS

In support of its Motion for Summary Judgment, defendant as movant filed a Statement of Undisputed Material Facts ("DSMF") [39-2].  See N.D. Ga. Civ. R. 56.1B.(1).  Local Rule 56.1(B)(2)(a) requires the opposing party to submit a response to a movant's statement of undisputed material facts.  Plaintiff pro se failed to do so.  Because of this failure to respond, pursuant to the Local Rules, the Court must deem each of defendant's statements of undisputed, material fact to be admitted, to the extent they are supported by the record cite provided:

> This Court will deem each of the movant's facts as admitted unless the respondent:  (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1(B)(1);

See N.D. Ga. Civ. R. 56.1(B)(2)(a)(2); see also Reese v. Herbert, 527 F.3d 1253, 1267-71 (11th Cir. 2008); Digioia v. H. Koch & Sons, Div. of Wickes Mfg. Co., 944 F.2d 809, 811 n.6 (11th Cir. 1991) (per curiam) ("the facts as set out in [defendant's] concise statement of facts not at issue are deemed admitted" by operation of the Local Rules because they were not controverted); Jones v.

5

Gerwens, 874 F.2d 1534, 1537 n.3 (11th Cir. 1989) ("[f]acts set forth in the Defendants' Statement of Undisputed Facts which are not controverted, are deemed admitted" pursuant to the Local Rules).

CitiMortgage relies on its "First Requests for Admissions to Plaintiff Leah Beltz" [39-4] (the "RFA") to support much of DSMF.  Federal Rule of Civil Procedure 36 allows a party to serve on any other party a written request to admit the truth of any matter within the scope of Rule 26(b)(1)[6] relating to "facts, the application of law to fact, or opinions about either" and "the genuineness of any described documents."  Fed. R. Civ. P. 36(a)(1)(A)-(B).  In response, the opposing party must serve a written answer or objection regarding those matters within thirty days.  See id. 36(a)(3).  If the opposing party fails to answer or object within that time period, the matters are considered admitted.  Id.  "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended."  Id. 36(b).  Defendant served Ms. Beltz with the RFA on February 8, 2016.  (See RFA 11.)  Plaintiff failed to respond to the RFA within thirty days of that date.  (See Fox Decl. [39-

_____

[6] Federal Rule of Civil Procedure 26 permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).

3] ¶ 9.)  She did, however, attempt to respond via an Exhibit to her Response [41-1], filed May 17, 2016, approximately two months after her time to do so had expired.

As noted <u>supra</u>, the Court may, on motion, permit withdrawal or amendment of a response to a request for admission.  <u>See</u> Fed. R. Civ. P. 36(b).  The Court may do so if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits.  <u>Id.</u>

The undersigned first observes that plaintiff <u>pro se</u> did not file a motion to amend or withdraw, but instead attached her responses to the RFA as an Exhibit to her Response.  The undersigned declines to construe this attempt to respond to the RFA two months after the time to do so had expired as a motion to amend or withdraw.  While courts show leniency to <u>pro se</u> litigants, this leniency does not permit a court to serve as <u>de facto</u> counsel for a party, and <u>pro se</u> litigants are still required to conform to the procedural rules.  <u>See</u> <u>Wayne v. Jarvis</u>, 197 F.3d 1098, 1104 (11th Cir. 1999) ("Liberal construction does not mean liberal deadlines."); <u>see also</u> <u>Birl v. Estelle</u>, 660 F.2d 592, 593 (5th Cir. Nov. 1981) (per curiam)

("The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law.").[7]  Moreover, even if the undersigned were to construe the Response as a motion to amend or withdraw, there is no permissible basis to grant such a motion pursuant to Rule 36. CitiMortgage would be prejudiced in defending this action on the merits because it relied heavily on the RFA in its Motion and in drafting DSMF.  Thus, the Court will not consider plaintiff's late response to the RFA.  Each of defendant's thirty-nine requests for admission in the RFA is considered conclusively established.[8]

Defendant's factual statements are supported by the record citations, and are thus deemed admitted.  Given these undisputed material facts, discussed below, entry of summary judgment is appropriate.

### A.  Plaintiff's Residential Mortgage Loan

On June 27, 2006, Ms. Beltz obtained a mortgage Loan (the "Loan") from Mercantile Mortgage Company ("Mercantile") in the amount of $382,900.00.

_____

[7] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions handed down before the close of business on September 30, 1981. Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc).

[8] Moreover, as discussed infra, even if the Court considered plaintiff's late response to the RFA, the resolution of the instant Motion would not be affected, because defendant has provided other admissible evidence showing that no disputed issues of fact remain.  (See notes 11-12, infra.)

8

(DSMF ¶ 1; Am. Compl. ¶ 1; RFA No. 1, Ex. A.)  In connection with the Loan, plaintiff signed a Note (the "Note") in favor of Mercantile and a Security Deed (the "Security Deed") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Mercantile, granting MERS a first priority security interest in the Property.  (DSMF ¶¶ 2-3; Schneider Decl. [6-1] ¶ 5; RFA No. 1, Ex. A; Schneider Supp. Decl. [16-1] ¶ 6.)  MERS assigned the Loan and Security Deed to CitiMortgage, the Loan's servicer. (DSMF ¶ 4; Am. Compl. ¶ 4; Schneider Supp. Decl. ¶ 7. )

### B.   Plaintiff Defaults on the Loan

Ms. Beltz defaulted on the Loan in March 2010. (DSMF ¶ 5; Schneider Supp. Decl. ¶ 9; RFA No. 5.)  Thus, on January 11, 2011, CitiMortgage sent her a letter to the Property address providing formal notice that she had defaulted (the "Notice of Default") and notifying her that she must cure the default by February 11, 2011.  (DSMF ¶¶ 6-7; Schneider Supp. Decl. ¶ 11, Ex. 2.)  Plaintiff did not cure the default by that date.  (DSMF ¶ 8; RFA No. 34.)

### C.   CitiMortgage's First Foreclosure Attempt and Settlement

CitiMortgage then scheduled a foreclosure sale of the Property for May 3, 2011, which Ms. Beltz contested by filing a "Petition for Emergency Hearing, Injunctive Relief and Specific Performance" against CitiMortgage in the Superior

Court of Cobb County, Georgia on April 27, 2011 ("Beltz I"). (DSMF ¶ 9; Schneider Decl. ¶ 9.) Plaintiff and CitiMortgage mediated and then settled Beltz I by executing a Compromise, Settlement and Release Agreement (the "Settlement Agreement") on September 19, 2013. (DSMF ¶¶ 10-11; Schneider Decl. ¶ 10; RFA Nos. 2, 3, 7, Ex. B.) The Settlement Agreement provided that Ms. Beltz could remain in the Property, paying $600.00 per month for taxes and insurance, but no mortgage payments, from March 15, 2013 to March 15, 2014. (DSMF ¶ 12; Schneider Decl. ¶ 11.) In return, plaintiff agreed voluntarily to vacate the Property and not object to or interfere with any future foreclosure efforts by CitiMortgage should she fail to obtain a permanent Loan modification on or before March 15, 2014. (DSMF ¶ 13; Schneider Decl. ¶ 12.)

### D.  Plaintiff Files for Bankruptcy

Plaintiff did not apply for a Loan modification during the one-year period provided in the Settlement Agreement, at least in part because she believed that she did not have the income necessary to qualify. (DSMF ¶¶ 14-15; Schneider Decl. ¶ 14; RFA Nos. 8, 14, 15.) Instead, Ms. Beltz filed for Chapter 7 bankruptcy protection (the "Bankruptcy Action") on March 10, 2014. (DSMF ¶ 16; RFA No. 9.) CitiMortgage filed a Motion for Relief from an automatic stay granted to plaintiff in the Bankruptcy Action, seeking approval from the

Bankruptcy Court to recommence foreclosure proceedings against the Property, to which plaintiff failed to respond. (DSMF ¶¶ 17-18; RFA No. 11; Schneider Decl. ¶¶ 16-17.)  The Bankruptcy Court granted CitiMortgage's Motion for Relief, authorizing CitiMortgage to proceed with foreclosure.  (DSMF ¶ 18; RFA No. 11; Schneider Decl. ¶ 18.)

### E.   Plaintiff Seeks Loan Modification

After the Settlement Agreement's March 15, 2014 deadline had passed, Ms. Beltz asked CitiMortgage to consider her for a permanent Loan modification. (DSMF ¶ 19; Schneider Decl. ¶ 19.)  In response to her request, CitiMortgage explained the requirements of a Loan modification application, and provided plaintiff with deadlines by which she could submit a complete application. (DSMF ¶ 20; RFA Nos. 16-30.)   Plaintiff never submitted a complete Loan modification application to CitiMortgage.  (DSMF ¶ 21; Schneider Decl. ¶ 20.) Thus, on June 10, 2015, CitiMortgage sent a letter to Ms. Beltz stating that it could not evaluate her for a Loan modification because it had not received a complete Loan application package, and providing her with 60 days to vacate the Property (by August 15, 2015).  (DSMF ¶ 22; RFA Nos. 30, 35, Ex. D.)  Plaintiff did not vacate the Property by that date.  (DSMF ¶ 23; RFA No. 35.)   Ms. Beltz continued to occupy the Property through the date of CitiMortgage's eventual

11

successful foreclosure sale on October 6, 2015.  (DSMF ¶ 25; RFA No. 33.)

Plaintiff did not have the income or assets to pay her arrearage and reinstate her

Loan at or before the October 2015 foreclosure sale, and has not made any

mortgage payments since March 2010.  (DSMF ¶¶ 24, 26; RFA Nos. 34, 38;

Schneider Decl. ¶ 21.)

## II.    SUMMARY JUDGMENT STANDARD

A "court shall grant summary judgment if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law."  See Fed. R. Civ. P. 56(a).  The party moving for summary

judgment bears the initial burden of "informing the court of the basis for its

motion and of identifying those materials that demonstrate the absence of a

genuine issue of material fact."  Rice-Lamar v. City of Fort Lauderdale, 232 F.3d

836, 840 (11th Cir. 2000) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986)).  Those materials may include "depositions, documents, electronically

stored information, affidavits or declarations, stipulations (including those made

for purposes of the motion only), admissions, interrogatory answers, or other

materials."  Fed. R. Civ. P. 56(c)(1)(A).  "Only when that burden has been met

does the burden shift to the non-moving party to demonstrate that there is indeed

a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The non-moving party is then required "to go beyond the pleadings" and present competent evidence "showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). If in response the non-moving party does not sufficiently support an essential element of his case as to which he bears the burden of proof, summary judgment is appropriate. Rice-Lamar, 232 F.3d at 840. "In determining whether genuine issues of material fact exist, [the Court] resolve[s] all ambiguities and draw[s] all justifiable inferences in favor of the non-moving party." Id. (citing Anderson, 477 U.S. at 255).

In deciding a summary judgment motion, the court's function is not to resolve issues of material fact but rather to determine whether there are any such issues to be tried. Anderson, 477 U.S. at 250. The applicable substantive law will identify those facts that are material. Id. at 248. Facts that are disputed, but which do not affect the outcome of the case, are not material and thus will not preclude the entry of summary judgment. Id. Genuine disputes are those in

13

which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.  For factual issues to be "genuine," they must have a real basis in the record.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  When the record as a whole could not lead a rational trier of fact to find for the non-movant, there is no "genuine issue for trial." Id. at 587.

## III.  **DISCUSSION**

Given plaintiff's abandonment of most of her claims, only three remain for analysis:  violation of two sections of RESPA's implementing regulations, found at 12 C.F.R. part 1024 ("Regulation X"), specifically id. §§ 1024.41(b) (Count III) and 1024.41(g) (Count IV);[9] and violation of one section of RESPA itself, 12 U.S.C. § 2605(e) (Count V).

### A.   **Statutory Framework**

"RESPA is a consumer protection statute that regulates the real estate settlement process."  Hardy v. Regions Mortg., Inc., 449 F.3d 1357, 1359 (11th

_____

[9] Counts III & IV do not specify which provisions of Regulation X were violated by CitiMortgage.  Because CitiMortgage's Motion analyzes her claims under 12 C.F.R. § 1024.41, it appears that plaintiff's allegations adequately put defendant on notice regarding the nature of her claims.  Plaintiff did not contest defendant's interpretation of the Amended Complaint.  Thus, the undersigned analyzes Counts III & IV under the relevant subsections of 12 C.F.R. § 1024.41.

14

Cir. 2006) (citing 12 U.S.C. § 2601(a)).  Additionally, under RESPA, the CFPB is tasked with prescribing rules and regulations, as well as interpretations, "as may be necessary to achieve" RESPA's purpose.  See 12 U.S.C. § 2617(a).  One such implementing regulation, Regulation X, places various obligations on mortgage servicers when a borrower submits a loss mitigation application.  See generally 12 C.F.R. § 1024.41; see also Lage v. Ocwen Loan Servicing LLC, No. 14-CV-81522-BLOOM/VALLE, 2015 WL 7294854 (S.D. Fla. Nov. 18, 2015).  Counts III & IV assert violations of Regulation X, while Count V asserts a violation of RESPA itself.  (See Am. Compl. 16-18.)

To state an actionable claim that CitiMortgage did not comply with the CFPB-mandated loss mitigation procedures in Regulation X, or with the requirements of RESPA, Ms. Beltz must demonstrate that:  (1) CitiMortgage violated a provision of the applicable regulation; and (2) she was actually damaged by the violation.  See Russell v. Nationstar Mortg., LLC, No. 14-61977-CIV-BLOOM/VALLE, 2015 WL 5029346, at *6-7 (S.D. Fla. Aug. 26, 2015).

### B.   Plaintiff's Regulation X Claims (Counts III & IV)

Regulation X places various obligations on mortgage servicers when a borrower submits a loan mitigation application.  See generally 12 C.F.R. § 1024.41. A servicer "is only required to comply with the requirements of this

15

section for a single complete loss mitigation application for a borrower's mortgage loan account." Bennett v. Bank of Am., N.A., No. 8:16-CV-278-T-33TBM, 2016 WLJ 2610238, at *4 (M.D. Fla. May 6, 2016) (citing 12 C.F.R. § 1024.41(i).)

Servicers have the discretion to decide what is and what is not a complete application. See 12 C.F.R. § 1024.41(b)(1) ("A complete loss mitigation application means an application in connection with which a servicer has received all of the information that the servicer requires from a borrower"). Additionally, "[n]othing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option." Id. § 1024.41(a). However, "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA[10] (12 U.S.C. [§] 2605(f))." Id.; see also Cataldi v. N. Y. Cmty. Bank, No. 1:13-CV-3972-RWS-JSA, 2014 WL 359954 at *2 (N.D. Ga. Feb. 3, 2014) ("[12 C.F.R. § 1024.41] can be privately enforced under Section 6(f) of the Real Estate Settlement Procedures Act (12 U.S.C. § 2605(f)[.]").

---

[10] Section 2605(f) of RESPA details damages and costs available to plaintiffs bringing a successful claim. See 12 U.S.C. § 2605(f).

16

### 1.      Loan Modification (Count III)

Plaintiff alleges that CitiMortgage "fail[ed] to follow the proper procedures in evaluating [her] for a loan modification."  (Am. Compl.  ¶ 72.)  CitiMortgage interprets this allegation as an argument under 12 C.F.R. § 1024.41(b), which prescribes what a servicer must do when it receives a loss mitigation application 45 days or more before a foreclosure sale. Specifically, that regulation provides that when a servicer receives an application forty-five days prior to a foreclosure sale, the servicer is required to ascertain promptly whether the application is complete and to notify the borrower of this determination, in writing, within five days.  Id. § 1024.41(b)(2)(i).  Should the application be deemed incomplete, the servicer must "exercise reasonable diligence in obtaining documents and information to" complete the application, notifying the borrower, within five days, of "the additional documents and information the borrower must submit to make the loss mitigation application complete," and state a reasonable date by which the borrower should submit the documents and information.  Id. §§ 1024.41(b)(1), (b)(2)(i), (ii).

If the borrower fails to respond within the reasonable time provided and the application remains incomplete, the servicer may, at its discretion, evaluate the incomplete application.  12 C.F.R. § 1024.41(c)(2)(ii).  On the other hand, if the

borrower submits the requested documents or no additional information is requested, the application is considered "facially complete" for the purpose of triggering the servicer's evaluation obligations.  See id. § 1024.41(c)(2)(iv); see also Lage, 2015 WL 7294854; Bennett, 2016 WLJ 2610238.  Thus, a servicer such as CitiMortgage must receive a complete loss mitigation application before the remainder of its duties under Regulation X are triggered.

Here, the undisputed facts show that plaintiff never submitted a complete Loan modification application, either during the one-year period contemplated by the Settlement Agreement or afterward, despite CitiMortgage's providing her with a list of requirements and giving her deadlines by which to submit such an application.  (See Schneider Decl. ¶¶ 14, 20.)   Thus, CitiMortgage's remaining duties under 12 C.F.R. § 1024.41(b) were never triggered, and it could not have violated any requirement to perform them.[11]

---

[11] Moreover, as discussed supra note 8, even had the undersigned construed plaintiff's late attempt to respond to the RFA as a motion to amend her earlier admissions, the result would not change.  Defendant does not rely solely on the RFA to support its assertion that plaintiff never submitted a complete Loan modification application, but also proffers the Schneider Declaration in support of that fact.  Thus, even had plaintiff adequately contested the Requests for Admission, because she has not provided additional evidence that contraverts the Schneider Declaration, her claim under § 1024.41(b) of Regulation X fails.

Moreover, even had Ms. Beltz shown that she submitted a complete Loan modification application and that CitiMortgage violated § 1024.41(b) of Regulation X by failing properly to consider it, she cannot show that this violation caused her damages, because "[a]ny distress that [p]laintiff[] suffered from this thorny situation was self-inflicted." Russell, 2015 WL 5029346, at *9 (defaulting plaintiffs could not show damages under Regulation X because "they are unable to distinguish between injury allegedly caused by Nationstar's alleged RESPA violation and the subsequent foreclosure resulting from their own conduct"). Like the plaintiffs in Russell, Ms. Beltz here failed to make payments that she knew she owed, and failed to submit the applications required to obtain a Loan modification. Thus, plaintiff's damages were caused by her own behavior. Accordingly, summary judgment should be entered for CitiMortgage on plaintiff's claim under §1024.41(b), as set forth in Count III.

## 2.   Dual Tracking (Count IV)

Plaintiff alleges that CitiMortgage "violated the CFPB mortgage and loan servicing rules by simultan[eously] accepting Plaintiff's loan modification applications and on the other hand initiating foreclosure proceedings." (Am. Compl. ¶ 73.) CitiMortgage interprets this allegation as an argument under 12 C.F.R. § 1024.41(g). This section prohibits a servicer from moving forward with

a foreclosure sale while also considering a borrower's loan modification application (known as "dual tracking") if that borrower has submitted a complete loan modification application:

> If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale . . .

See id. § 1024.41(g).  The undisputed facts show that Ms. Beltz never submitted a complete Loan modification application.  Thus, CitiMortgage had no obligation to stop its foreclosure proceedings, because it had no complete application to review.  Thus, plaintiff's claim under 12 C.F.R. § 1024.41(g) fails.[12]  Accordingly, summary judgment should be granted for CitiMortgage on plaintiff's claim under §1024.41(g), as set forth in Count IV.

In sum, the undersigned **REPORTS** that plaintiff's Regulation X claims under 12 C.F.R. §§ 1024.41(b), (g) fail as a matter of law, and **RECOMMENDS** that summary judgment be entered in favor of CitiMortgage on those claims.

---

[12] Moreover, even had the undersigned construed plaintiff's late attempt to respond to the RFA as a motion to amend her earlier admissions, the result would not change.  (See notes 8 &11, supra.)

### C.   Plaintiff's RESPA Claim (Count V)

Count V alleges that defendant violated RESPA "by regularly ignoring Plaintiff's request for a status report regarding her loan modification" and "failing to timely and or sufficiently respond to Plaintiff's concerns," citing only to 12 U.S.C. § 2605(e).  (See Am. Compl. ¶¶ 76-77.)  Section 2605(e) requires loan servicers to respond to "a qualified written request from the borrower . . . for information relating to the servicing of such loan."  12 U.S.C. § 2605(e)(1)(A).  The term "servicing" is defined in 24 C.F.R. § 3500.2 as:

> . . . receiving any scheduled periodic payments from a borrower pursuant to the terms of any mortgage loan . . . and making the payments to the owner of the loan or other third parties of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the mortgage servicing loan documents or service contract . . .

25 C.F.R. § 3500.2(b).

All of the information that Ms. Beltz sought from CitiMortgage relates to her allegations that CitiMortgage failed to provide her with Loan modification or respond to her inquiries regarding her alleged attempts to submit Loan modification applications.  This information is outside the scope of the term "servicing" as defined in 24 C.F.R. § 3500.2(b).  See Echeverria v. BAC Home Loans Servicing, LP, No. 6:10-CV-1933-ORL-28, 2012 WL 1081176, at *2 (M.D. Fla. Mar. 30, 2012) (citing In re Salvador, 456 B.R. 610, 623 (Bankr. M.D. Ga.

21

2011)) (holding that requests for information about loan modification are not related to "servicing" the loan as defined in RESPA "because loan modifications do not involve receiving and making scheduled periodic payments from the borrower as required pursuant to the terms of the loan . . .").

Since CitiMortgage was not required to provide information regarding loan modification under 12 U.S.C. § 2605(e), a failure to respond to this type of request would not be a violation of that statute.  Thus, plaintiff's RESPA claim fails as a matter of law.  Accordingly, the undersigned **REPORTS** that summary judgment should be granted in favor of CitiMortgage on plaintiff's RESPA claim, as set forth in Count V.

## IV.  CONCLUSION

For the reasons explained above, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment [39] be **GRANTED.**

The Clerk is directed to terminate the reference to the Magistrate Judge.

**SO RECOMMENDED**, this 15th day of June, 2016.


WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE