IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LEAH BELTZ, formerly known as LEAH J. MEDLIN, | : : : |
| Plaintiff, | : : |
| v. | : : |
| CITIMORTGAGE, INC. | : CIVIL ACTION NO. : 1:15-CV-2649-AT : : |
| Defendant. | : |

## **ORDER**

This matter is before the Court on the Magistrate Judge's Report and Recommendation [Doc. 43] ("R&R") finding that Defendant CitiMortgage's Motion for Summary Judgment [Doc. 39] should be granted in this wrongful foreclosure case. For the following reasons, the Court **ADOPTS IN PART** and **DECLINES TO ADOPT IN PART** the R&R. The Court disagrees with several significant parts of the R&R's reasoning, and does not adopt those portions. However, the Court agrees with the R&R's ultimate conclusion that CitiMortgage is entitled to prevail because Plaintiff has failed to come forward with affirmative evidence sufficient to meet her obligations under the summary judgment standard.

**I. Standard**

Under 28 U.S.C. § 636(b)(1), the Court reviews the Magistrate Judge's R&R for clear error if no objections are filed to the report. 28 U.S.C. § 636(b)(1). If a party files objections, however, the district court must determine de novo any part of the Magistrate Judge's disposition that is the subject of a proper objection. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b). As Plaintiff filed timely objections to the Magistrate Judge's R&R, the Court reviews the findings and recommendations contained therein on a de novo basis.

The Court also briefly addresses the summary judgment standard when a moving party points to a non-moving party's alleged lack of evidence. In that situation, the moving party's burden is met by pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Then the non-moving party has the burden of showing that summary judgment is inappropriate by coming forward with specific facts showing a genuine dispute. *Thurmon, v. Georgia Pac., LLC*, No. 14-15703, 2016 WL 3033147, at *3 (11th Cir. May 27, 2016) (finding that a plaintiff "cannot prevail in their negligent design claim because they failed to come forward with evidence establishing causation, which is an essential element of any products liability action and citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. Discussion

Plaintiff alleges that CitiMortgage engaged in a half-decade's worth or more of misconduct when it approved her for a loan modification for her home mortgage back in 2010, pulled the rug out from under her by later refusing to honor or finalize that modification, and then gave her the run around as she tried to reapply for help to save her home. This course of conduct allegedly culminated in CitiMortgage allowing Plaintiff to reapply for a modification one last time in 2015, only to go radio-silent on her prior to summarily rejecting her for ticky-tacky deficiencies in her application. This, according to Plaintiff, violated the Consumer Financial Protection Bureau's (CFPB) new mortgage servicing regulations, 12 C.F.R. § 1024.41 *et seq.* and the Real Estate Settlement Procedures Act. 12 U.S.C. § 2605(f). Plaintiff filed suit in state court in the summer of 2015 raising these federal claims and a number of state law claims. The case was removed to this Court, and Plaintiff filed a motion for a preliminary injunction seeking to stop the looming foreclosure on Plaintiff's home.

The Court held a preliminary injunction hearing in this matter on August 27, 2015, but denied Plaintiff's motion because she had failed to demonstrate a substantial likelihood that she could prevail on her claims for equitable relief. CitiMortgage subsequently foreclosed on Plaintiff's home in October of 2015. At some juncture, Plaintiff began representing herself, and unfortunately failed to comply with all of her discovery obligations – specifically, her obligation to

respond to CitiMortgage's requests for admissions.  CitiMortgage then moved for summary judgment on all claims [Doc. 39].

The Court first addresses the Magistrate Judge's conclusion that Plaintiff abandoned her claims for breach of contract (Count 1), breach of good faith and fair dealing (Count II), under the Fair Debt Collections Practices Act (Count VI), the Georgia Fair Lending Act (Count VII), the Georgia Fair Business Practices Act (Count VIII), and for "pattern and practice" violations (Count X).  The Magistrate Judge correctly observes that Plaintiff did not address these claims in her opposition to Defendant's Motion for Summary Judgment, and that those claims are therefore deemed abandoned.  (R&R at 3.)

Plaintiff states in her objections that her "intent was to never abandon any complaint, I simply did not understand that responses were needed or I would have sent them with the other paperwork.  After reading many things that were out of scope of understanding, I have failed."  (Objections, Doc. 45 at 2.)  However, Plaintiff does not offer any substantive arguments as to why these claims should be preserved.  The Court understands Plaintiff's frustration and confusion, but the Court cannot make Plaintiff's arguments for her.  The Court therefore **ADOPTS** the R&R with respect to Counts I, II, VI, VII, VIII, and X and **DISMISSES** those claims.

Next, the Court addresses the remaining claims for violations of RESPA and the CFPB mortgage servicing regulations found in Regulation X, 12 C.F.R. § 1024 *et seq.*  These regulations were significantly amended in early 2014 to set

out a series of procedures that servicers must comply with when evaluating struggling homeowners' applications for loan modifications or other mortgage assistance. *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10,696, 2013 WL 525347 (Feb. 14, 2013) (codified at 12 C.F.R. pt. 1024); 12 C.F.R. § 1024.41.

Failure to comply with these regulations is a violation of RESPA, and results in a potential claim for actual damages, statutory damages, and attorney's fees. 12 U.S.C. § 2605(f). However, the regulations do not guarantee a loan modification or any other loss mitigation result for any homeowner. 12 C.F.R. § 1024.41(a) ("nothing [in this section] imposes a duty on a servicer to provide any borrower with any specific loss mitigation option").

Plaintiff's loss mitigation claims (Counts III and IV) allege that Defendant failed to follow proper procedures in evaluating Plaintiff for a loan modification in the spring of 2015, and then "dual-tracked" her by simultaneously evaluating her for a loan modification and scheduling her for foreclosure. The Court **ADOPTS** the R&R's ultimate conclusion that CitiMortgage is entitled to summary judgment on these claims but disagrees with several parts of the R&R's reasoning.

First, the R&R recommends that both of these claims be dismissed because Plaintiff failed to submit a "complete loan modification application," which, according to the R&R, a servicer "must receive . . . before the remainder of its duties under Regulation X are triggered." (R&R at 18.)

This statement is not quite right. The "loss mitigation procedures" portion of Regulation X, located at 12 C.F.R. § 1024.41, may be enforced under RESPA. Some of these provisions require a servicer to act before a "complete loss mitigation application" is submitted. For example, a servicer has the obligation to notify a borrower "in writing within 5 days" after receiving a loss mitigation application if the servicer considers the application "complete or incomplete." 12 C.F.R. § 1024.41(b)(2)(i)(B). This provision applies to "loss mitigation applications" in general, not only "complete" applications. If a servicer fails to comply with this provision then the borrower may bring suit even though she failed to submit a "complete" loss mitigation application. Otherwise a servicer might be able to simply ignore a borrower's application and then inform her after foreclosure that it was "incomplete." Similarly, under some circumstances, a servicer is prohibited from "evading" the regulation's requirements by reviewing an incomplete loss mitigation application and offering its loss mitigation options (or lack thereof) based on that half-baked review. *See* 12 C.F.R. § 1024.41(c)(2)(i). This provision also does not require a plaintiff to submit a "complete" application before it is triggered. The Court therefore **DECLINES** to adopt the R&R to the extent it holds that a "complete" application is always required to trigger Regulation X's loss mitigation protections.

The Court also **DECLINES TO ADOPT** the Magistrate Judge's R&R to the extent it concludes that Plaintiff's "fail[ure] to make payments that she knew she owed, and fail[ure] to submit the applications required to obtain a Loan

6

modification" automatically precludes her from recovering under RESPA and the CFPB regulations. (R&R at 19.) There are several problems with this holding.

First, it would almost entirely defeat the purpose of Regulation X. If borrowers in default are always deemed to be fully responsible for their own foreclosures, there would be little point in the regulation's protections. A servicer could violate many of Regulation X's prohibitions willy-nilly and yet always count on the get-out-of-jail-free card that the borrower fell behind in the first place.

Second, it seems plain that quite often a servicer can play a significant causal role in a foreclosure even when a borrower is in default. After all, not every borrower who falls behind loses her home. What about that borrower who falls a month or two behind, who obviously qualifies for a loan modification, who crosses all of her t's and dots all of her i's in applying for said modification, but who loses her home because of her servicer's continued failure to properly follow the procedures imposed by Regulation X? Sure, the borrower there got close to the metaphorical fire of foreclosure. But it was the servicer that pushed the borrower into that fire and precipitated the foreclosure through its regulatory violations.

The Court acknowledges that some cases, like *Russell v. NationStar Mortgage, LLC*, have held differently. There, the court found that a borrower's default meant he could not establish that a servicer's RESPA violations caused his damages. No. 14-61977-CIV, 2015 WL 5029346, at *7 (S.D. Fla. Aug. 26, 2015). But *Russell* is not compatible with a reasonable reading of the CFPB regulations

and their concomitant right to sue, which would have no point if every borrower who falls behind is precluded from recovering. And other courts have found differently. *Paz v. Seterus, Inc.*, No. 14-62513-CIV, 2015 WL 4389521, at *4 (S.D. Fla. July 16, 2015) (finding plaintiff stated claim for damages under RESPA even though she had admittedly defaulted on her mortgage loan).

However, the Court ultimately agrees with the R&R's recommendation that Plaintiff's counts for violations of the servicing regulations must fail, because Plaintiff has failed to provide evidence of causation.[1] CitiMortgage argued in its Motion that Plaintiff has not and cannot come forward with any evidence indicating that Plaintiff was damaged *as a result* of the violation. (*See* Motion at 18-19 ("Plaintiff has introduced no evidence to show that she was damaged by the violation . . . [*because she*] *did not have the assets or income to qualify for a loan modification*") (emphasis added).) When CitiMortgage pointed to the fact that Plaintiff had presented no evidence that CitiMortgage's allegedly wrongful conduct in 2015 caused Plaintiff to lose her home or suffer other damages, it was

---

[1] The Court is not entirely convinced by CitiMortgage's arguments that because Plaintiff has failed to provide evidence of actual damages, it is entitled to summary judgment. (Doc. 42 at 13.) First, those questions are often better resolved at trial. *Carter v. Countrywide Home Loans, Inc.*, No. CIV. 3:07-CV651, 2009 WL 1010851, at *5 (E.D. Va. Apr. 14, 2009) (rejecting motion for summary judgment on issue of damages under RESPA). Second, Plaintiff was actually foreclosed on. If that foreclosure was found by the factfinder to be the result of CitiMortgage's conduct, that would potentially result in damages. *James v. Litton Loan Servicing, L.P.*, No. 4:09-CV-147 CDL, 2011 WL 59737, at *10 (M.D. Ga. Jan. 4, 2011) ("Plaintiffs may recover for "non-pecuniary damages, such as emotional distress and pain and suffering" in connection with wrongful foreclosure claim.) The Court notes that there of course may be some situations when summary judgment on the issue of damages in a RESPA case might be appropriate.

incumbent on Plaintiff to come forward with *some* evidence.  *See Celotex Corp.*, 477 U.S. at 325.

This she does not do.  She does not present any affidavit evidence or any affirmative proof in her response to CitiMortgage's Motion or in her Objections that suggests she would have qualified for a modification and saved her home if not for CitiMortgage's conduct.  And even if the Court were to consider Plaintiff's late responses to CitiMortgage's Requests for Admissions, they tend to show that Plaintiff had no evidence suggesting she was qualified for a loan modification.[2]  In fact, the evidence in the record tends to show that Plaintiff believed she *did not* qualify for a loan modification with CitiMortgage unless it took special steps to accommodate her that it was not obligated to take.

For example, Plaintiff's statements at the August 27, 2015 injunciton hearing indicated that she understood that, at least in 2015, she could not qualify for a loan modification under any of CitiMortgage's modification programs unless it provided her with special treatment outside of its guidelines.  She testified that "I can afford to live in the home if they do as the HAMP program suggests, *which they're not required to do*, but to back off some of the fees, the penalties, and

---

[2] Plaintiff's responses indicate that she could present evidence of a RESPA violation but not necessarily causation.  In responding to a Request that Plaintiff admit she "believed that [she did not have the income or assets to qualify for a Loan modification after March 15, 2015 unless CitiMortgage agreed to waive substantial fees and costs that accrued after you made your last regular Loan payment in March 2010," Plaintiff responded "I could not discuss anything with Citi Mortgage due to being denied access to find out what would enable the Loan Modification to be approved."  (Doc. 41-1 at 4-5.)  This indicates Plaintiff was potentially being wrongfully treated by CitiMortgage, but it does not indicate that she was *qualified* for a loan modification such that CitiMortgage's violations caused the harm of foreclosure.  And she provided no evidence of other harms.

interest." (Injunction Hearing Transcript ("Transcript"), Doc. 18, p. 72:15-17)[3] (emphasis added). The Court acknowledges that Plaintiff's view is that it was CitiMortgage's conduct in allegedly failing to complete a much earlier modification in 2010 led to her current predicament. But she can only recover for her RESPA claims for recent conduct, because the relevant regulations only went into effect in 2014. And she did not present any evidence in her papers or at the injunction hearing indicating that she could specifically tie CitiMortgage's 2015 conduct to her inability to obtain a loan modification. (Transcript, p. 89:16-18.) ("if they were willing to do a modification and back off of some of those fees, then we – I would be treated fairly at that point.") Similarly, Plaintiff's dual-tracking claim also cannot survive summary judgment because she presented no evidence that she could have actually saved her home from foreclosure by qualifying for a loan modification. In other words, Plaintiff presents no evidence that the end result of foreclosure would have been any different if CitiMortgage had not violated RESPA and Regulation X. *See Cole v. Wells Fargo Bank, N.A.*, No. CV121932KMMAH, 2016 WL 1242765, at *9 (D.N.J. Mar. 30, 2016) (granting summary judgment in favor of lender when plaintiff-borrower failed to provide evidence "that Wells Fargo's [RESPA violations] *caused* her actual damages") (emphasis added).

---

[3] Plaintiff also conceded that she did not qualify for a loan modification in early 2014. (Transcript, p. 77:22-23) ("if I sent in the documents that I have [in February of 2014], they could turn me down on that.")

Next, the Magistrate Judge recommends that CitiMortgage be granted summary judgment on Plaintiff's RESPA claim for CitiMorgage's alleged failure to respond to her Qualified Written Request ("QWR").

The Magistrate Judge bases this recommendation on his conclusion that "[a]ll of the information that Ms. Beltz sought from CitiMortgage relates to her allegations that CitiMortgage failed to provide her with [a] [l]oan modification or respond to her inquiries regarding her alleged attempts to submit" loan modification applications. (R&R at 21.) According to the Magistrate Judge, "[t]his information is outside the scope of the term of "servicing."[4]

The Court recognizes that there is case law that holds that processing and granting loan modification applications is not "related to servicing" as defined by RESPA. Although many of these cases predate the 2014 amendments to Regulation X, some of these decisions were issued after the new provisions went into effect. *E.g.*, *Bullock v. Ocwen Loan Servicing, LLC*, No. CIV. PJM 14-3836, 2015 WL 5008773, at *10 (D. Md. Aug. 20, 2015) ("a request for information about loan modification does not constitute a QWR.") But even the more recent cases that hold that loan modification issues are not related to servicing often rely on authorities that predate the 2014 amendments to Regulation X. *See, e.g., id.*

---

[4] RESPA defines servicing "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

(*citing Van Egmond v. Wells Fargo Home Mortgage,* No. SACV 12-0112 DOC, 2012 WL 1033281, at *1 (C.D. Cal. Mar. 21, 2012). These decisions are difficult to square with the revamped Regulation X. The Court is therefore unconvinced that the distinction between "servicing" and loss mitigation activity is tenable in light of Regulation X's 2014 amendments.

For example, Regulation X creates a "notice of error procedure" which is similar to a qualified written request, and may be included within one. 12 C.F.R. § 1024.35. This procedure allows a borrower to contact a servicer about an error on their account. The regulatory provisions describing this procedure specifically state that one error a borrower may raise is a servicer's "[f]ailure to provide accurate information to a borrower regarding loss mitigation options and foreclosure, as required by § 1024.39." 12 C.F.R. § 1024.35(b)(7). Much of the remainder of 12 C.F.R. § 1024.35 describes a variety of other payment-related disputes that have traditionally been associated with loan servicing, and it includes a catch-all allowing borrowers to raise "[a]ny other error relating *to* the servicing of a borrower's mortgage loan." 12 C.F.R. § 1024.35(b). The catch-all indicates that the previously identified types of errors – including the error of failing to provide accurate information regarding loss mitigation options – are "related" to servicing. It therefore seems likely that the CFPB considered loss mitigation "related" to servicing when it promulgated this section. More, the loss mitigation requirements of Regulation X impose requirements on *servicers* specifically – not loan originators, or loan owners. In short, how can a request

for information regarding loss mitigation not be considered "related" to loan servicing when the regulations make plain that servicers have significant obligations to engage borrowers in the loss mitigation process and when in practice servicers are almost always the primary points of contact for borrowers seeking loss mitigation assistance?

Finally, some recent cases have indicated or held that the handling and processing of loan modification applications is related to servicing. *See Lage v. Ocwen Loan Servicing LLC,* 145 F. Supp. 3d 1172, 1190 (S.D. Fla. 2015) (discussing notice of error procedures as opposed to qualified written requests and acknowledging that a claim under RESPA for a failure to respond to a loan-modification inquiry is viable but granting summary judgment to servicer because plaintiffs failed to establish genuine issue of fact with respect to damages); *McClain v. CitiMortgage, Inc.*, No. 15-C-6944, 2016 WL 269568, at *5 (N.D. Ill. Jan. 21, 2016) (holding that letters that "properly sought clarification as to the status of [plaintiff's] modification and whether further documentation was needed" were QWRs related to servicing). The Court finds these cases more persuasive than the authority cited by the Magistrate Judge, and therefore **DECLINES** to adopt the R&R to the extent it holds loss mitigation procedures are unrelated to loan servicing.

However, the Court still finds that CitiMortgage is entitled to summary judgment on Count V for nearly the same reasons the Court finds it appropriate to grant summary judgment on Counts III and IV: Plaintiff has not pointed to

13

any evidence that CitiMortgage caused her any harm through its failure to respond to her QWR.[5] Again, the Court does not believe that this would have been extremely difficult – simple affidavit evidence might have sufficed, including affidavit evidence about the time and expense Plaintiff incurred in trying to get the information CitiMortgage refused to provide. *Davis v. Greenpoint Mortgage Funding, Inc.*, No. 1:09-CV-2719-CC-LTW, 2011 WL 7070221, at *15 (N.D. Ga. Mar. 1, 2011), *report and recommendation adopted in part, rejected in part*, No. 1:09-CV-2719-CC-LTW, 2011 WL 7070222 (N.D. Ga. Sept. 19, 2011) (plaintiff pled damages under RESPA for time spent "inconvenienced and incurred expenses.") But Plaintiff has not done so, meaning the Court is obligated to grant summary judgment in favor of CitiMortgage on this claim.

### III. Conclusion

The Court understands that under the best circumstances, the judicial system can be a bewildering maze for pro se parties. Sometimes it is a maze for practiced attorneys.

And something may have in fact gone very wrong here. The Court recognizes the undoubtable pain that Plaintiff suffered when she lost her home of sixteen years. But because Plaintiff has not presented *evidence* – as opposed to allegations - showing that CitiMortgage's conduct in the spring of 2015 caused

---

[5] Plaintiff also failed to provide any evidence that CitiMortgage engaged in a pattern or practice of violations that would allow her to recover statutory damages under RESPA. 12 U.S.C. § 2605(f)(1)(B).

her to lose her home – the Court finds itself compelled to grant summary judgment in favor of CitiMortgage. The Report and Recommendation is **ADOPTED IN PART** as provided herein [Doc. 43]. The Court **GRANTS** summary judgment to CitiMortgage on all of Plaintiff's claims [Doc. 39]. The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED** this 26th day of July, 2016.

_____
**Amy Totenberg
United States District Judge**